# Preemptive Effect of the Bill Emerson Good Samaritan Food Donation Act

The Bill Emerson Good Samaritan Food Donation Act preempts state "good samaritan" statutes that provide less protection from civil and criminal liability arising from food donated in good faith for distribution to the needy than the Act provides.

March 10, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF AGRICULTURE

You have requested our views on the question whether the Bill Emerson Good Samaritan Food Donation Act (the "Act"), Pub. L. No. 104–210, 110 Stat. 3011 (1996) codified as amended at 42 U.S.C. § 1791 (Supp. II 1996), preempts state statutes that provide less protection from civil and criminal liability arising from food donated in good faith for distribution to the needy. We believe that Congress intended to establish a minimum level of immunity for those engaged in food donation and distribution. Accordingly, we believe that Congress intended to preempt state "good samaritan" statutes that provide less liability protection than the Act.

## I.

In order to "encourage the donation of food and grocery products to nonprofit organizations for distribution to needy individuals," the Bill Emerson Good Samaritan Food Donation Act precludes civil and criminal liability arising from food donated in good faith, except in cases of gross negligence or intentional misconduct. 42 U.S.C. § 1791. It amended and converted to affirmative law the Model Good Samaritan Food Donation Act (the "Model Act"), 42 U.S.C. §§ 12671–12673 (1994), which had been enacted in 1990 to provide states with model language for revising their existing good samaritan laws.[1] The current Act provides:

> (1) LIABILITY OF PERSON OR GLEANER. — A person or gleaner shall not be subject to civil or criminal liability arising from

---

[1] Every state and the District of Columbia prior to 1990 had enacted some form of statutory protection from liability for food donation and distribution. See H R Rep. No. 104–661, at 2–3 (1996) (citing "Summary of Good Samaritan Food Donation Statutes" prepared by Winthrop, Stimson, Putnam and Roberts in 1992 for "Share Our Strength," a non-profit hunger relief organization). These statutes are exceptions to the common law or statutory rule of strict liability for distributing food or any other defective product, the defective aspect of which causes injury. Id The statutes vary considerably, however Some provide liability only for gross negligence or intentional acts, while others impose liability for negligence. Still others limit liability if the donor reasonably inspects the food at the time of donation and has no actual or constructive knowledge of any defective condition Only one state has adopted the language m the Model Act. Id.

the nature, age, packaging, or condition of apparently wholesome food or an apparently fit grocery product that the person or gleaner donates in good faith to a nonprofit organization for ultimate distribution to needy individuals.

(2) LIABILITY OF NONPROFIT ORGANIZATION. — A non-profit organization shall not be subject to civil or criminal liability arising from the nature, age, packaging, or condition of apparently wholesome food or an apparently fit grocery product that the non-profit organization received as a donation in good faith from a person or gleaner for ultimate distribution to needy individuals.

(3) EXCEPTION. — Paragraphs (1) and (2) shall not apply to an injury to or death of an ultimate user or recipient of the food or grocery product that results from an act or omission of the person, gleaner, or nonprofit organization, as applicable, constituting gross negligence or intentional misconduct.

42 U.S.C. § 1791(c).[2]

## II.

As the Supreme Court has observed, preemption is fundamentally a question of congressional intent. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996) ("[t]he purpose of Congress is the ultimate touchstone in every pre-emption case") (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn,* 375 U.S. 96, 103 (1963)). In assessing congressional intent, the Court has "long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Id.* In cases where "Congress has 'legislated . . . in a field which the States have traditionally occupied'" the Court "'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). It is with this admonition in mind that we examine the preemptive effect of the Act.

The Supreme Court has identified three ways in which a federal law may preempt state law.[3] First, Congress may preempt state law explicitly in the text of its statute. *See English v. General Elec. Co.,* 496 U.S. 72, 78 (1990).[4] Second,

---

[2] The Act defines a "gleaner" as "a person who harvests for free distribution to the needy, or for donation to a nonprofit organization for ultimate distribution to the needy, an agricultural crop that has been donated by the owner " 42 U.S.C § 1791(b)(5)

[3] *See generally Freightliner Corp. v. Myrick,* 514 U S 280, 287 (1995), *Cipollone v. Liggett Group, Inc,* 505 U S 504, 516–17 (1992)

[4] For example, to expressly preempt state regulation on a particular subject, Congress may provide that "[n]o State or political subdivision of a State may establish or continue in effect   any requirement — (1) which is

Congress may preempt state laws implicitly by demonstrating an intent to occupy the field exclusively with federal regulation. *See Rice*, 331 U.S. at 230. Finally, even where Congress permits concurrent state regulation in a field, such regulation is preempted to the extent it actually conflicts with federal law. The Supreme Court has found an actual conflict where "compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1962), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

Although the Act contains no express preemption clause, its purpose is to supersede, at least to a certain extent, state good samaritan statutes. Thus, the question is *to what extent* it supersedes those statutes. We believe the Act clearly preempts state good samaritan statutes to the extent they provide less liability protection than federal law — for example, to the extent they permit liability based on evidence of negligence — because such laws literally would "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67. As stated above, the express purpose of the Act is to "encourage the donation of food and grocery products to nonprofit organizations for distribution to needy individuals" by limiting liability for such activities. Unless potential donors and distributors are assured that the Act sets an absolute liability ceiling, they will continue to be deterred by the threat of liability under state law and will not be encouraged by the Act to donate food. Thus, to have any effect at all, the Act must preempt state statutes that provide less liability protection.

The legislative history of the Act confirms this interpretation. As Representative Danner explained when introducing the bill in the House,

> the current patchwork of State laws has been cited by many potential donors as the principal reason so much food is thrown away rather than given to food banks and food pantries for distribution to the hungry. . . .
>
> Simply put, we need a reasonable nationwide law that eliminates confusion and forges a stronger alliance between the public and private sectors in this Nation. That is exactly what this bill delivers.

---

different from or in addition to, any requirement applicable under [federal law] . . . and (2) which relates . . to any other matter included in a requirement applicable .  under [federal law]." 21 U S.C. § 360k(a) (1994) (Federal Food, Drug, and Cosmetic Act, as amended by the Medical Device Amendments), *see also* 29 U S C. § 1144(a) (1994) (provision in ERISA preempting "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"). Congress instead may limit the extent to which states may regulate, by providing for example that "[a] State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement " Federal Railroad Safety Act, 45 U.S C § 434, *repealed by* Act of July 5, 1994, Pub. L No. 103–272, § 7(b), 108 Stat. 1379

The [Act] will establish a uniform national law to protect organizations and individuals when they donate food in good faith.

A business should not have to hire a legal team to interpret numerous State laws so that it feels comfortable in contributing food to the hungry.

142 Cong. Rec. 17,066 (1996).

The remarks of other members of Congress also demonstrated an intent to preempt those state good samaritan statutes that conflict with the federal standard. *See e.g.*, H.R. Rep. No. 104–661, at 7 (1996) ("The bill would preempt civil and criminal liability laws of state and local governments that deal with the donation of food and grocery products to nonprofit organizations."); 142 Cong. Rec. 21,516 (1996) (statement of Sen. Kennedy) (acknowledging that the Act would "diminish the protections afforded by the tort laws"). Indeed, Representative Conyers expressed concern about the intended preemptive effect of the Act:

Although I am supportive of the impetus behind the legislation — encouraging private entities to donate food to nonprofit organizations who distribute food to the needy — I question whether preempting traditional State law prerogatives in this area is desirable . . . . [A]ll 50 States have enacted special statutory rights concerning food donations. Not surprisingly, the States have crafted a variety of liability rules — ranging from those who subject all negligent parties to liability, to those who limit liability only to grossly negligent or intentional acts.

Unfortunately, with the adoption of this bill, the House will be seeking to impose a one-size-fits-all [sic] legal standard for food donors . . . .

142 Cong. Rec. 17,067 (1996).

President Clinton also apparently believed that the Act would preempt conflicting state laws. In his signing statement the President observed:

In working with various private sector donors and food banks . . . it has come to light that liability concerns are often an impediment to food recovery and donation efforts. Although many States have enacted their own "Good Samaritan" laws to support food recovery and donation efforts, many businesses have advised that these varying State statutes hinder food donations. This legislation will end the confusion regarding liability for food recovery and

> donation operations through uniform definitions in one national law.

2 Pub. Papers of William J. Clinton 1737, 1737–38 (1996).

We believe that the legislative history of the Act, together with its express purpose and the context in which it was enacted, indicate that Congress intended to establish a "uniform national law" that displaces conflicting state good samaritan statutes — i.e., those that provide less liability protection than federal law. There is an argument that Congress intended to go even farther, preempting not only less protective state statutes but all state good samaritan laws. Although we acknowledge that some parts of the legislative history could be read to support this argument, we find insufficient evidence that Congress intended to preempt the field. "Field preemption" does not seem necessary to achieve the congressional goals underlying the Act. The Act should have the desired effect of encouraging food donation as long as it assures potential donors that they will not incur liability for conduct above a certain national level of culpability. The existence of state standards that provide even greater protection from liability should not deter food donation; indeed, they may further promote it. Furthermore, as noted above, the Supreme Court is reluctant to construe preemption broadly in areas traditionally regulated by the states.[5] For these reasons, we decline to interpret the Act to preempt all state good samaritan statutes. Rather, we construe the Act to preempt only those state good samaritan statutes that furnish less liability protection than federal law.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[5] *See Medtronic, Inc*, 518 U S at 485; Rice 331 U S. at 230